## CITY COUNCIL OF CHARLESTON v. CAULFIELD.

1. Failure of master to report his conclusions of law and fact, is no ground for an exception. *Bollman* v. *Bollman*, 6 *S. C.* 30, approved.
2. Bonds of a municipal corporation received and sold by the mortgagor are a sufficient consideration to support his mortgage.
3. A claim of homestead cannot be asserted by the mortgagor against his mortgage deed.
4. A mortgage based upon the receipt of certain fire loan bonds cannot, after default, be decreed to be satisfied by the return of like bonds, although the mortgagor was permitted, by the terms of his contract, to discharge his debt before its maturity by a payment in such bonds—especially so, no tender having been made.

5. There is no error in refusing to strike from the docket a cause in which no steps have been taken by plaintiff for a year and a day after answer filed.

6. A stay of sale, pending appeal from a decree of foreclosure, is not proper unless the appellant has executed the written undertaking required by section 352 of the code of procedure.

7. A party having given a mortgage to secure payment for certain fire loan bonds, issued by a municipal corporation, which bonds were received by him and sold, and the proceeds used for his own purposes, is bound by his mortgage, whether the bonds were legally issued or not.

8. A mortgage given to the city council of Charleston to secure the redemption of certain bonds issued by them to the mortgagor, is properly sued by the city council in its own name.

9. Notwithstanding a power of sale given in this mortgage, foreclosure, under the stipulations of the contract, and even without any such stipulation expressed, might be had in the Court of Common Pleas.

10. Under the amendments to the statute which authorized the issue of these bonds, and under the ordinance of the city council, passed in pursuance thereof, the erection of wooden buildings upon the lots mortgaged was permitted.

Before HUDSON, J., Charleston, December, 1881.

The opinion states the case.

*Mr. W. M. Thomas*, for appellant.

*Mr. G. D. Bryan*, contra.

April 17th, 1883.    The opinion of the court was delivered by

MR. JUSTICE MCIVER.    The defendant, Mr. Caulfield, (the other defendants being parties merely as junior lien creditors,) appeals from a judgment of foreclosure of a mortgage of real estate.    The mortgage was given for the purpose of "securing all sum or sums of money which have been or may be loaned to me under the ordinance for rebuilding the burnt district and waste places of the city of Charleston, ratified the twenty-eighth day of August, in the year one thousand eight hundred and sixty-six, with interest, insurance and other proper charges."

The scheme of this ordinance, in general terms, was that bonds of the city, which are usually called fire loan bonds, were to be issued and loaned to owners of lots in the burnt district, which loans were to be secured by mortgage of such lots, and not only

were the faith and funds of the city pledged for the payment of the fire loan bonds, but all sums of money received in payment of loans made to the lot owners were "set apart and appropriated as a special fund for the redemption and extinguishment of said bonds and interest." It was, therefore, manifestly a scheme by which the city was to lend its credit to the lot owners for the purpose of enabling them to obtain the means of rebuilding on the lots over which a disastrous fire had passed, destroying the buildings in a large portion of the city. With a view to quiet doubts entertained as to the power of the city council to pass such an ordinance, the legislature, on September 19th, 1866, (13 *Stat.* 371,) passed an act in which the ordinance was set out in full, ratifying and confirming the same. The act also prescribed the form of the mortgage to be taken by the city council as security for any loans made under it, which form seems to have been followed in the case now in hand.

On June 23d, 1870, the mortgage in question was executed to secure the payment of sundry bonds of the appellant, made on that day and on other days up to January 1st, 1871, aggregating, in the whole, the sum of $8,000, and fire loan bonds of the city were delivered to the appellant in exchange therefor, which last-mentioned bonds were put on the market by him and sold at various prices, ranging from forty-eight to fifty-two cents on the dollar. It appeared in evidence that these loans were effected upon the mortgage of lots upon which wooden buildings were erected. Various defenses were set up by the appellant, which will be stated more particularly when we come to state the exceptions to the judgment appealed from.

The case was placed on the Equity Docket for November Term, 1880, and defendant made a motion to strike it from the docket, upon the ground that more than a year and a day had elapsed since the filing of the answer, without any intervening steps having been taken in the cause. This motion was refused and the appellant excepted.

The master to whom it was referred, to report upon the issues of law and of fact raised in the pleadings, reported that no payments had been made on account of the principal or interest due on the bonds of the appellant, since January 1st, 1871, and that

on July 1st, 1871, as it is stated in the "Case" (though we presume it is a misprint and should be 1881), there was due and payable the sum of $15,753.97, for principal, interest, taxes and insurance, and that he saw nothing in any of the defenses set up which should operate to defeat the right of the plaintiff to have a sale of the mortgaged premises, which he accordingly recommended. To this report appellant excepted on various grounds, but as they are all adopted as part of his exceptions to the judgment, they need not be set out here. The Circuit judge confirmed the master's report, and gave judgment for foreclosure and sale, and from this judgment the defendant Caulfield appeals upon numerous grounds, which are, in effect, as follows:

1. Because the master did not report the testimony taken in the cause.

2. Because he has not reported his findings of fact and his findings of law.

3. Because he should have reported as a fact that the action was on the penal bond of a private party, payable to the city, conditioned to pay for a loan to him of city fire loan bonds, upon his application, to improve his private property with said bonds.

4. Because he should have reported as law that the city could not maintain an action on such a bond or contract, which is invalid, as conditioned for the faithful application of the city bonds to works which the city had no power to construct, or assist in constructing.

5. Because he should have reported that the fire loan bonds are without authority of law, being for private and not for public objects.

6. Because he should have reported that the bond was in contravention of the act of 1866.

7. That the plaintiff is not the real party in interest, nor has it clean hands in this transaction, so as to enable it to maintain this action, nor can the city be a trustee for the real plaintiffs as to this real estate.

8. That there was no proof of the condition of the bond having been broken, there being no evidence of any money loaned ; that the defendant is entitled to a homestead under any

decree which may be made in favor of the real parties in interest; that only a decree for payment in fire loan bonds can be rendered, and that there has been no proof of notice under the terms of the ninth section of the act of 1866.

9. Because the decree is in contravention of the eighth and ninth sections, article IX., of the State constitution, and of article V. of amendments to the United States constitution.

10. Because of error in refusing the motion to strike the case from the docket.

11. Because a stay should have been granted under sections 361 or 363 of the code of 1870.

The point raised by the first ground, even if maintainable at all as a ground of appeal, has been obviated by the supplement to the " Case," in which the testimony taken does appear.

The second ground is disposed of by the case of *Bollman* v. *Bollman*, 6 *S. C.* 44.

None of the several points raised by the eighth ground can be sustained. If the appellant received valuable consideration (as we shall presently see that he did) for his bonds secured by the mortgage sought to be foreclosed in this action, we cannot conceive what difference it makes whether such consideration consisted of money or something else.

That the claim of homestead cannot be sustained against the mortgage is too well settled to admit of dispute. *Homestead Association* v. *Enslow*, 7 *S. C.* 1; *Rosenberg* v. *Lewi*, 7 *S. C.* 344; *Smith* v. *Mallone*, 10 *S. C.* 39.

Nor is the position that only a decree for payment in fire loan bonds could be rendered, based upon any better foundation. The appellant did not obligate himself to pay in that way. His obligation was to pay so much money, not to return the fire loan bonds which he received. The provision contained in the fifth section of the ordinance, authorizing the borrower to pay in fire loan bonds, only applied to payments in advance of the stated times of payments, and the appellant having failed to avail himself of such provision cannot now claim any benefit therefrom, especially as he does not now tender payment in such bonds.

As to the objection that there was no proof of notice, that is

fully met by the supplement to the "Case," where it appears that the appellant did receive notice not only from the city treasurer, but also from the corporation counsel.

We are not aware of any statute or rule of court under which the tenth ground can be sustained, and there is nothing in the "Case" which shows that the appellant had taken the necessary steps to entitle him to the stay claimed by the eleventh ground.

Under the view which we take of this case it will not be necessary to consider or determine whether the legislature had the power, under the constitution, to invest the city council with authority to issue the fire loan bonds for the purposes contemplated by the ordinance of the city council of August 28th, 1866, as ratified and confirmed by the act of 1866, hereinbefore cited. But, while not intending to indicate any opinion as to the constitutional question raised in the argument, we shall assume, for the purposes of this case only, that the city council had no lawful authority to issue the fire loan bonds for the purposes contemplated by the ordinance, and that they, therefore, are not valid obligations of the city. But, assuming all this, the question still remains, whether the appellant is not nevertheless liable on his contract with the city council.

To have a clear view of this question it will only be necessary to inquire what was practically the transaction between the city council and the appellant. It was simply this—the appellant not having the means necessary to enable him to rebuild, obtained from the city council the means of doing so; and it seems to us wholly immaterial to the inquiry, whether the city council, in obtaining the means which it furnished to the appellant, went outside of its corporate authority or not. The appellant got what he wanted and what he bargained for, and in equity and good conscience he ought to pay what he agreed to pay for what he got and used. Having received the fire loan bonds from the city council, sold them and applied the proceeds to his own use, it certainly does not lie in his mouth to say that the bonds which he has thus converted to his own use are not valid obligations of the city, and therefore that he is released from his obligation to pay the amount which he has agreed to pay for them. He received them as valid obligations, sold

them to others as such, enjoyed the benefits of such sale, and he is now estopped from denying their validity.

This seems to us so plainly in accordance not only with well settled principles of equity, but also with the dictates of common honesty, that we cannot suppose that any authority is needed to support so plain a proposition. But if authority be necessary, we think it can be found in the case of *Railroad Companies* v. *Schutte,* 103 *U. S.* 118. In that case bonds of the State of Florida, on which were endorsed certificates of the governor, to the effect that they were issued in aid of certain railroad companies, and that the State of Florida held first mortgage bonds of said companies for a like amount as further security to the holders thereof, which had been issued without constitutional authority, were delivered to certain railroad companies in exchange for their own bonds secured by statutory mortgages, and the State bonds were put upon the market and sold by the railroad companies. One of the questions in the case was as to the liability of the railroad companies under their statutory mortgages, and it was held that they were liable notwithstanding the want of validity of the State bonds which they had received in exchange for their own bonds secured by the statutory mortgages.

Chief Justice Waite, in delivering the opinion of the court, after conceding the invalidity of the State bonds, used this language: " But it by no means follows that because the State is not liable on its bonds, the companies are free from responsibility under their statutory mortgages. By the express provisions of the act the State bonds were to be given the company in exchange for its own bonds. The company, not the State, was to use and dispose of the State bonds. The object of the State was to aid the company with its credit.   *   *   *
It is clear, therefore, that the intention was that, as between the State and the company, the State was to be the guarantor of the company bonds, and the company the principal debtor. With the public, however, it was different. There the State was the debtor and the company was only known through the statutes under which the bonds were put out, and the certificates endorsed on the bonds themselves, which were that the State

held the first mortgage bonds of the railroad company for a like amount, as security to the holder thereof. Such bonds of the State, with such endorsements, the company put on the market and sold. Under these circumstances the certificate of the governor as to the security held by the State is, in legal effect, the certificate of the company itself, and equivalent to an engagement on the part of the company that the bonds, so far as the security is concerned, is the valid obligation of the State. The case is clearly within the reason of the rule which makes every endorser of commercial paper the guarantor of the genuineness and validity of the instrument he endorses. We cannot doubt that under these circumstances the company is estopped, so far as its own liabilities are concerned, from denying the validity of the bonds. Having negotiated them on the faith of such a certificate, the company must be held to have agreed, as part of its own contract, whatever that was, that the bonds were obligatory." Again, at page 144, in disposing of the position that the recovery must be limited to the amount actually received for the State bonds when sold by the companies, he said: "As we have endeavored to show, the bonds, although void as to the State, are valid as to the company that sold them. Having been put on the market by the companies as valid bonds, the companies are estopped from setting up their unconstitutionality. As against the companies they occupy in the market the position of commercial securities, and may be dealt with and enforced as such. * * * In commerce, commercial paper means what on its face it represents, regardless of what its maker or promoter may have got for it."

The fact that there was no such certificate endorsed upon the fire loan bonds as there was upon the Florida State bonds, cannot, as was argued by the appellant, affect the question. The liability arises from having put the bonds on the market as valid, having sold them as such, and having received the proceeds of sale. But, as matter of fact, the recital contained in the fire loan bonds, the form of which is given in the supplement to the "Case," practically amounts to the same thing as the certificates on the Florida bonds. It seems to us clear, therefore, both upon principle and authority, that the appellant

cannot escape liability, even though it be conceded that the fire loan bonds are not valid obligations of the city.

By the seventh ground the appellant makes the point that the plaintiff is not the real party in interest, and, therefore, cannot maintain this action, nor can it be a trustee for such real party, and in that way maintain the action. Whether the plaintiff is or is not the real party in interest, depends upon facts not developed in the pleadings or evidence. On the face of the papers the city council appears to be the legal owner and holder of the bonds secured by the mortgage in question, and it was incumbent upon the appellant to show the facts to be otherwise. It will be observed that the faith and funds of the city were pledged for the payment of the fire loan bonds, as well as all sums of money received in payment of loans made to the lot owners. If, therefore, a portion of the fire loan bonds had been redeemed, as was stated at the bar to be the fact, out of the funds of the city derived from taxes, and sources of revenue other than amounts collected on loans to lot owners, the city, to that extent, became the absolute owner of the bonds given to secure loans to an amount equal to the amount of the fire loan bonds so redeemed.

But, waiving this, as it rests upon suppositions and not evidence, we do not see why the city council cannot be regarded as holding the bonds and mortgages to secure the loans made to lot owners, as trustee of a fund for the redemption of the fire loan bonds, and thereby trustee for the holders of such bonds. 2 *Dill. Mun. Corp.*, § 437, *et seq.*, where the leading cases are cited at length, showing that a municipal corporation may hold property in trust. If, then, the plaintiff is such a trustee, the holders of the fire loan bonds would undoubtedly have an equity to compel the city council to collect the bonds given by the lot owners, and apply the proceeds to the purpose for which such bonds were given; and, if so, it would seem to follow, necessarily, that the city council might, of their own motion, do that which they could be compelled to do.

But it is urged that, even if the city council can be regarded as trustee for the fire loan bond holders, the action should have

O

been brought by the plaintiff, as trustee. We are unable to appreciate the force of this position. The mortgage here sued upon was not given to the city council as trustee, and we see no necessity for making such an addition to the name of the plaintiff in this case. The action is brought, and properly brought, in the name of the obligee of the bonds secured by the mortgage sought to be foreclosed, who is the legal owner and holder thereof. *Code of* 1882, § 134.

Again, the appellant contends that, as the mortgage contains an authority for the mortgagee to sell the mortgaged premises, in case of default in making payments as they become due, the plaintiff cannot maintain an action for foreclosure, but must resort to the remedy provided by the act in prescribing the form of the mortgage, with a power of sale clause. This provision is merely permissive and not mandatory, as is clearly shown by the provision in section 7 of the ordinance, expressly declaring that if the borrower shall, at any time, be in arrear for one year's interest, his mortgage shall be foreclosed. But, even were this not so, it is well settled that the power of sale is merely an additional remedy, and does not preclude a proceeding by action. As is said in 2 *Jones Mort.*, § 1773, "The power is merely a cumulative remedy. It is one species of foreclosure, but it does not exclude jurisdiction in equity."

As we understand the sixth ground, the point intended to be there made is that the loan was invalid because it was made upon a mortgage of lots upon which wooden buildings were erected, the seventh section of the ordinance forbidding such a loan. Aside from the fact that the appellant is, by this position, attempting to take advantage of his own wrong in erecting a wooden building, in violation of that section of the ordinance upon which his point is based, it appears that, by the acts of February 28th, 1870, (14 *Stat.* 378,) and March 1st, 1870, (14 *Stat.* 412,) the city council were authorized to alter this provision as to wooden buildings, and that, accordingly, an ordinance to that effect was passed before the loans were made, which the mortgage now in question was given to secure.

The judgment of this court is that the judgment of the Circuit Court be affirmed.